**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BRIAN GUERINGER** *Plaintiff* | * | **CIVIL ACTION NO.: 2:26-cv-00674** |
| **VERSUS** | * | **JUDGE DARREL J. PAPILLION** |
| **HARVEY VOLUNTEER FIRE COMPANY NO. 2** *Defendant* | * | **MAGISTRATE EVA J. DOSSIER** |

* * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF HARVEY VFD'S PARTIAL MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant, Harvey Volunteer Fire Company No. 2 ("Harvey VFD" or "Defendant"), respectfully submits this memorandum in support of its *Partial Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*. Plaintiff, Brian Gueringer ("Gueringer" or "Plaintiff"), filed the First Amended Complaint ("Amended Complaint") in lieu of timely opposing Harvey VFD's first Rule 12(b)(6) motion.[1] Despite purporting to remedy the pleading defects of his initial filing, Gueringer's 44-page, 290-paragraph long Amended Complaint still relies on conclusory allegations of fact and law.[2] Accordingly, the Court should grant Harvey VFD's motion, dismissing each of the claims discussed herein, with prejudice and without leave to amend.

**Allegations and Summary of Argument**

Harvey VFD is a non-profit corporation organized under Louisiana law.[3] It is not a political subdivision or public body of the state. Harvey VFD contracts with Jefferson Parish to provide fire

---

[1] R. Docs. 7, 8.
[2] R. Doc. 8.
[3] *Id.* at ¶ 148. *See also* Exhibit 1, Louisiana Secretary of State's Certified Information Certificate for Harvey Volunteer Fire Company No. 2. Pursuant to Fed. R. Evid. 201, Harvey VFD requests that the Court take judicial notice of its registration with the Louisiana Secretary of State as a non-profit corporation. Because Harvey VFD's registration as a non-profit corporation is publicly accessible and maintained by an official government agency, it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). *See also Inclusive Communities Project*, *Inc. v. Lincoln Prop*. Co., 920 F.3d 890, 900 (5th Cir. 2019) ("In determining

protection and emergency response services through a workforce of both paid employees and volunteer staff.[4] Harvey VFD hired Gueringer as a full-time operator/firefighter (hereafter "firefighter") on or about January 8, 2019.[5] He remained in this position until his April 11, 2025 termination.[6] Gueringer alleges "serious medical conditions, including Crohn's disease, immune suppression, blood-loss complications, pulmonary embolism/blood clots...long-Covid related complications," and undisclosed "related conditions."[7]

Despite the Amended Complaint's wide-ranging claims, the operative allegations are straightforward. On or about April 16, 2024, Gueringer commenced an extended medical leave from Harvey VFD.[8] His leave was allegedly prompted by the development of blood clots in his lungs and resulting blood loss.[9] Gueringer took medical leave pursuant to La. R.S. § 33:1995 ("365 Leave"), during which Harvey VFD furnished "full pay...for a period of not less than fifty-two weeks."[10] Indeed, Gueringer outwardly admits that "[Harvey VFD] recognized [his] right to paid medical leave and paid him" during his 365 Leave.[11]

On April 10, 2025, less than one week before his 365 Leave would expire, Gueringer sent Harvey VFD "a physician's release clearing him to return to full-duty firefighting without restrictions."[12] Thus, having received confirmation that Gueringer's alleged condition had fully resolved and, consequently, that his need for leave had ceased, Harvey VFD notified Gueringer

---

whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.").

[4] R. Doc. 8 at ¶¶ 10, 149.

[5] *Id.* at ¶ 18.

[6] *Id.* at ¶¶ 4, 77, 81.

[7] *Id.* at ¶¶ 2, 20.

[8] *Id.* at ¶ 26.

[9] *Id.*

[10] *Id.* at ¶ 27. *See also* La. R.S. § 33:1995.

[11] *Id.* at ¶¶ 28, 179.

[12] *Id.* at ¶ 63, 277.

that his employment was terminated effective April 11, 2025.[13] Gueringer alleges that he "was not subject to progressive discipline," and that the decision was reached "without notice, charges, investigation, hearing, or meaningful opportunity to respond."[14]

Gueringer does not allege that Harvey VFD terminated him, demoted him, or reduced his compensation during his medical leave. Further, he does not allege that Harvey VFD denied his right to take leave, discouraged him from taking leave, disciplined him for taking leave, or coerced him to return early or without medical clearance. Rather, the Amended Complaint makes three key allegations. First, Gueringer enjoyed nearly one full, uninterrupted calendar year of medical leave, with full pay and benefits provided by Harvey VFD in accordance with La. R.S. 33:1995.[15] Second, Gueringer's doctor provided an unconditional, unequivocal, unrestricted return to work release on April 10, 2025.[16] Third, Harvey VFD continued to employ and compensate Gueringer until April 11, 2025; only terminating him after receiving confirmation of his unrestricted release to full duty work.[17]

Against this backdrop, Gueringer offers dozens of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). By contrast, his substantive (i.e., non-conclusory or formulaic) factual allegations are sparse and temporally sporadic.[18]

Gueringer first claims that on or about August 5, 2024, approximately four months into his leave, Fire Chief Scott Berthelot called him to "regarding [Gueringer's] medical condition and

---

[13] *Id.* at ¶¶ 4, 77, 81.
[14] *Id.* at ¶¶ 19, 198.
[15] *Supra* notes 10, 11.
[16] *Supra* note 12.
[17] *Supra* note 13.
[18] Harvey VFD notes that several of Gueringer's allegations are mischaracterized, and at times, fail to comport with reality. Further, Gueringer frequently omits additional context which, Harvey VFD submits, was intentional in an attempt to avoid dismissal – albeit an unavailing attempt. However, for the limited purpose of this Rule 12(b)(6) motion, Harvey VFD accepts the allegations and omissions as true.

return-to-work status."[19] Berthelot allegedly told Gueringer that if he remained susceptible to Covid-induced blood clots, he "need[ed] to ask [his] doctor about disability" because Harvey VFD "[could not] guarantee a Covid free workplace."[20] Gueringer does not allege that he expressed opposition to or otherwise challenged Berthelot's alleged statement. Instead, he allegedly called Training Chief Tommy Berggren – apparently to discuss it.[21] Yet, on this alleged call, Gueringer still did not complain of disability discrimination. Rather, he simply "report[ed] [to Berggren] what [Berthelot] had said."[22] Gueringer declares that these non-descript communications "placed [Harvey VFD] on notice that [he] opposed disability-based exclusion from work."[23]

Gueringer further alleges that on February 18, 2025, more than six months after his alleged phone call with Berggren, Harvey VFD Executive Assistant Paulette Mataya instructed him to remove a statement "that he contracted Covid at work from a co-worker" from a Louisiana workers' compensation ("LWC") injury form.[24] Specifically, Mataya allegedly asked that he remove the precise qualification that he contracted Covid "at work," noting that Berthelot "would not sign the form" otherwise.[25] Gueringer purportedly "stated...he did not understand why" he had to revise the form, but nonetheless submitted a revision as requested.[26] Thereafter, Mataya allegedly authorized a temporary hold of his paycheck due to outstanding "administrative" matters "related to ethics training and paperwork," rather than the LWC form.[27] Gueringer concedes,

---

[19] R. Doc. 8 at ¶ 34.
[20] *Id.* at ¶¶ 35-37.
[21] *Id.* at ¶ 40.
[22] *Id.*
[23] *Id.* at ¶¶ 43-44.
[24] *Id.* at ¶¶ 45, 47.
[25] *Id.* at ¶¶ 49-50.
[26] *Id.* at ¶¶ 52-54.
[27] *Id.* at ¶¶ 54-57.

however, that he later received the paycheck.[28] He does not allege that this paycheck was in any way reduced, or even withheld at the time of his termination, because it was not.

The Amended Complaint consists of "conclusory allegations or legal conclusions masquerading as factual conclusions." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (quoting *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)) (emphasis added). Gueringer's "more is more" pleading approach in the Amended Complaint is unavailing because the Court "do[es] not presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Verastique v. City of Dallas, Texas*, 106 F.4th 427, 431 (5th Cir.) (quoting *Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023)) (emphasis added). Consequently, nearly all of Gueringer's nineteen claims fail to pass Rule 12(b)(6) muster.

## Law and Argument

### I. Gueringer's LEDL discrimination and retaliation claims must be dismissed because Harvey VFD, a nonprofit corporation, is statutorily exempt from liability.

Gueringer asserts disability discrimination and retaliation claims arising under La. R.S. § 23:301, *et seq.* (the "LEDL").[29] The LEDL provides "a cause of action against an employer" for unlawful employment action taken on account of legally protected characteristics. La. R.S. § 23:303(A). Fatally to Gueringer's LEDL claims, the statute's definition of "employer," expressly provides that "[t]his Chapter shall not apply to... [e]mployment of an individual by... any nonprofit corporation." La. R.S. § 23:302(2)(b) (emphasis added). *See Sebble v. NAMI New Orleans, Inc.*,

[28] *Id.* at ¶ 59, 187.
[29] *Id.* at ¶¶ 140-145.

No. CV 17-10387, 2018 WL 929604, at *2 (E.D. La. Feb. 16, 2018) ("It is undisputed that [the LEDL] specifically exempts from its coverage '[e]mployment of an individual by ... any nonprofit corporation.'") (internal citation omitted). *See also Sanders v. Christwood*, 970 F.3d 558, 565 (5th Cir. 2020) (acknowledging LEDL's "exclusion" and "carve-out" for nonprofits). "This statutory definition given by the LEDL controls over the general test for employers based on a right of control." *Dejoie v. Medley*, (La. App. 2 Cir. 12/20/06), 945 So. 2d 968, 974. Here, Harvey VFD need not address the substantive merits of these claims, because Gueringer readily admits that "Defendant is a nonprofit corporation."[30] Thus, because Harvey VFD is exempt from liability under the LEDL as a matter of law, the Court must dismiss this claim.

## II. Gueringer's Rehabilitation Act discrimination claim should be dismissed because he alleges multiple, incompatible reasons for his termination.

Gueringer alleges that his termination and loss of benefits give rise to a disability discrimination claim under of Section 504 of the Rehabilitation Act, 29 U.S.C. 794.[31] To state a claim under the Rehabilitation Act, Gueringer must show that "(1) he has a qualifying disability; (2) he is being excluded from participation in, denied the benefits of, or otherwise discriminated against by a covered entity; and (3) such discrimination is by reason of his disability." *Hickson v. St. David's Healthcare P'ship, L.P., L.L.P.*, 168 F.4th 282, 289 (5th Cir. 2026). Crucially, "the plaintiff must establish that disability discrimination was the <u>sole</u> reason for the exclusion or denial of benefits." *Id.* (quoting *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 676 (5th Cir. 2020)) (emphasis in original). The statute's use of "solely," "provides the key: the discrimination must result from the handicap and from the handicap alone." *Id.* (quoting *Johnson ex rel. Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992)).

---

[30] *Supra* note 3.
[31] *Id.* at ¶¶ 133-139.

Here, Gueringer fails to state a claim under the Rehabilitation Act because he has not shown that disability discrimination was the "sole reason" for the alleged adverse action. While Gueringer offhandedly claims he was "terminated solely by reason of disability," the totality of the Amended Complaint tells a different story.[32] Indeed, Gueringer alleges that Harvey VFD terminated him for several reasons; including, to interfere with his attainment of ERISA benefits;[33] to retaliate for his purported whistleblowing;[34] to retaliate for his purported exercise of rights protected by the Louisiana Firefighter Bill of Rights;[35] and, to intentionally inflict emotional distress.[36] None of these alternatives constitute disability discrimination, let alone establish it as the "sole" cause for his termination. Accordingly, the Court should dismiss Gueringer's Rehabilitation Act claim.

## III. Gueringer's Firefighter Bill of Rights claims should be dismissed for multiple reasons

### a. Gueringer was not "under investigation" or "interrogation," nor subject to "discipline," as required to trigger applicability of La. R.S. § 33:2181.

Gueringer alleges that Harvey VFD violated La. R.S. § 33:2181, the "Firefighter Bill of Rights," by withholding his paycheck and terminating him without following the procedural steps set forth in the statute.[37] "This statute was created to protect fire department employees in <u>disciplinary proceedings</u>." *Ouachita Par. Police Jury v. Ouachita Par. Fire Prot. Dist. No. 1 Civ. Serv. Bd.*, (La. App. 2 Cir. 9/21/11), 72 So. 3d 987, 991 (emphasis added). Gueringer, however, contends that his non-disciplinary temporary paycheck holding and termination warranted application of the statute's procedural steps. This is incorrect.

---

[32] R Doc. 8 at 138.
[33] *Id.* at ¶ 285.
[34] *Id.* at ¶ 218.
[35] *Id.* at ¶ 173.
[36] *Id.* at ¶ 237.
[37] *Id.* at ¶ 148, 157.

Rather, the procedural requirements only apply to those "under investigation with a view to possible disciplinary action, demotion, or dismissal." La. R.S. §33:2181(A)(1*). See also Farrelly v. Jefferson Par. E. Bank Consol. Fire Dist.*, 19-216 (La. App. 5 Cir. 12/4/19), 284 So. 3d 680, 682, n. 1 ("The Firefighter Bill of Rights, set out in La. R.S. § 33:2181, requires the application of certain minimum standards 'whenever a fire employee is under investigation.'"). It follows that without an underlying "view to possible discipline," Gueringer was not "under investigation" for the same. A fire department cannot comply with investigatory procedures if no investigation is warranted or conducted. *See* La. R.S. §33:2181.

Even if Harvey VFD did inquire regarding Gueringer's LWC documentation, health prognosis, and return-to-work status, these actions did not place him "under investigation" as a matter of law.[38] "Under the Firefighters Bill of Rights, not all inquiries by an employer rise to the level of investigation or interrogation." *Bergeron v. City of Kenner*, 10-229 (La. App. 5 Cir. 10/26/10), 51 So. 3d 143, 147. While the statute does not define "investigation," Louisiana courts interpret it as "a close study or systematic inquiry into a situation... when an authorized person starts to make inquiries or collect evidence concerning a fire employee where the end result is...possible disciplinary action, demotion, or dismissal." *Id.* at 146 (quoting *La. Att'y Gen. Op. No. 08-0291* (Jan. 29, 2009)). Simply put, an "investigation" involves more than mere inquiry. Harvey VFD allegedly asked Gueringer only informal questions regarding non-disciplinary, administrative "housekeeping" matters. These informal inquiries fail to even approach a "close study" or "systematic" review of Gueringer; and thus, do not give rise to an investigation.

Further, even if Gueringer was under investigation, which he was not, investigation alone is insufficient to trigger applicability of the Firefighters Bill of Rights. Rather, the statute's

---

[38] *Id.* at ¶ 151.

procedures are only required when the department investigates "with a view to possible disciplinary action, demotion, or dismissal." La. R.S. § 33:2181(A)(1) (emphasis added). Plain meaning construction, jurisprudence, and legislative intent all reveal that the statute was enacted strictly "to protect fire department employees in disciplinary proceedings." *Ouachita Par. Police Jury*, 72 So. 3d at 991. For that reason, a "formal interview, inquiry, or questioning" necessitating the statute's procedural protections is one "regarding misconduct, allegations of misconduct, or policy violation." La. R.S. §33:2181(A)(2) (emphasis added).

Gueringer does not allege that he was under investigation or subject to interrogation, let alone with a view to discipline. He was not accused of misconduct or policy violation. Further, he makes only vague, conclusive allusions to "discipline," with no factual support to articulate the basis for any purported discipline. Consequently, Gueringer has failed to plead facts implicating applicability of the Firefighter's Bill of Rights under La. R.S. § 33:2181.

**b. Gueringer did not exercise a protected right under La. R.S. § 33:2185.**

Similarly, Gueringer alleges that Harvey VFD terminated him and withheld wages in violation of the Firefighter Bill of Rights' anti-retaliation provision, La. R. S. § 33:2185.[39] The statute provides that "[t]here shall be no penalty nor threat of any penalty for the exercise by a fire employee of his or her rights under this Subpart." La. R. S. § 33:2185 (emphasis added). A plain reading of the statute provides that protected rights under "this Subpart," that is, Title 33, Chapter 4, Part II, Subpart H of the Louisiana Revised Statutes, are limited to those provided by La. R. S. § 33:2181, *et seq.* Thereunder, the "minimum standards" contemplated in Subsection (B) establish protected rights, including the right: (1) to receive written of the investigation or interrogation, including the nature of the investigation or interrogation, the identity and authority of the

[39] *Id.* at ¶¶ 52-55.

investigator, the identity of persons present during the interrogation; and the specific charge or violation prompting investigation or interrogation; (2) to take notes during the interrogation and to obtain a copy of the required recording or transcript; (3) to demand reasonable time limitations for an interrogation; (4) to have counsel or a representative present during an interrogation; (5) to present witnesses during an interrogation; (6) to be free of incrimination based on statements provided during the investigation. *See* La. R.S. § 33:2181(B).

Here, Gueringer fails to plead that he exercised any of the protected rights enumerated by La. R.S. § 33:2181, *et. seq*. Gueringer fails to plead that any investigation, interrogation, or misconduct prompting "a view to possible discipline[e]" took place. *Id.* It follows that he also fails to plead exercise of any protected right in connection therewith. Gueringer thinly alleges that he "exercised rights protected by [the statute]" and "opposed [Harvey VFD's] failure to provide procedural protections."[40] This is merely a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544. Further, even accepting as true that Gueringer asserted rights in connection with his medical leave, this does not amount to retaliation under La. R. S. § 33:2185.[41] Indeed, the right to 365 Leave vests under Title 33, Chapter 4, Part II, Subpart B of the Louisiana Revised Statutes. *See generally* La. R.S. § 33:1995. The anti-retaliation provision of La. R. S. § 33:2185 only applies to the exercise of "rights under this Subpart" that is, Subpart H. *See* La. R. S. § 33:2185 (emphasis added). Accordingly, Gueringer's retaliation claim under the Firefighter's Bill of Rights fails as a matter of law.

**IV. Gueringer's "365 Leave" claim should be dismissed with no recourse because, as alleged, Harvey VFD permitted him to take the leave.**

[40] *Id.* at ¶¶ 167, 172.
[41] *Id.* at ¶¶ 166-175.

Gueringer alleges that his termination "violated La. R.S. § 33:1995 and Louisiana public policy protecting firefighters' sick leave."[42] Accepting Gueringer's allegations as facially true, they foreclose the possibility, let alone plausibility, of this claim. Pursuant to La. R.S. § 33:1995, "every fireman... shall be entitled to full pay during sickness or incapacity not brought about by his own negligence or culpable indiscretion for a period of not less than fifty-two weeks." La. R.S. § 33:1995. Gueringer does not allege that Harvey VFD violated this right. In fact, he affirmatively pleads the opposite. Gueringer commenced 365 Leave on or about April 16, 2024, and was medically cleared to return without restrictions on April 10, 2025.[43] In Gueringer's own words, Harvey VFD "recognized [his] right to paid medical leave and paid him during leave."[44]

Despite this, he speculates that the department terminated him "to avoid future leave obligations."[45] However, this claim presupposes several hypotheticals: first, that Gueringer is legally entitled to additional periods of 365 Leave funded by Harvey VFD; second, that he will medically require 365 Leave again in the future; and third, that Harvey VFD will fail to fulfill its leave obligations. Yet, the statute is silent on whether 365 Leave is available on an indefinite, or even renewable, basis. *See* La. R.S. § 33:1995. *See also Floyd v. E. Bank Consol. Fire Prot. Dist. for Par. of Jefferson*, 09-780 (La. App. 5 Cir. 4/13/10), 40 So. 3d 160. Thus, "[w]ithout a failure to act by the Fire Department, there can be no justiciable controversy regarding this issue." *Floyd*, 40 So. 3d at 163 (emphasis added). Accordingly, because Gueringer pleads that Harvey VFD honored its 365 Leave obligations and presents no present justiciable controversy, the Court should dismiss this claim.

---

[42] *Id.* at ¶ 182.
[43] *Id.* at ¶¶ 26, 277.
[44] *Id.* at ¶ 179.
[45] *Id.* at ¶ 180.

### V. Gueringer's Louisiana Wage Payment Act claim should be dismissed because Harvey VFD did not withhold wages due upon his termination.

Gueringer alleges that Harvey VFD violated the Louisiana Wage Payment Act, La. R.S. § 23:631 ("LWPA") by placing a temporary hold on his February 2025 paycheck.[46] Under the LWPA, an employer must pay a former employee "the amount then due under the terms of employment" within fifteen days of the former employee's discharge or resignation or the next post-discharge payday, whichever is earlier. La. R.S. § 23:631(A)(1)(a)-(b) (emphasis added). To state a claim under the LWPA, Gueringer must allege that (1) he was employed by Harvey VFD; (2) the employment relationship ceased to exist; (3) that, at the time the employment relationship ended, he was owed wages; and (4) Harvey VFD failed to submit the owed wages within the statutorily mandated 15 days. *See Sutton v. Adams*, 2019-0975 (La. App. 4 Cir. 10/12/22), 351 So. 3d 403, 409.[47] Gueringer's Complaint fails under the third and fourth elements of the LWPA analysis.

Indeed, Gueringer's LWPA claim fails because Harvey VFD did not withhold wages owed upon his termination. Accepting the Amended Complaint's allegations as true, Harvey VFD terminated Gueringer's employment "effective April 11, 2025."[48] But, he does not allege that Harvey VFD withheld wages on this date of his termination. Rather, Gueringer pleads that Harvey VFD withheld his wages "on or about February 18, 2025."[49] In fact, Gueringer concedes that he received his paycheck "late," but indisputably prior to April 11, 2025 termination.[50] Therefore, Gueringer fails to allege that "at the time the employee-employer relationship ended, he was owed

---

[46] *Id.* at ¶ 185.
[47] "The purpose of the LWPA is to compel an employer to pay the employee promptly after the employment is terminated." *Gallo v. Greenpath Int'l, Inc.*, 2021-0313 (La. App. 4 Cir. 12/16/21), 334 So. 3d 399, 407, *writ denied*, 2022-00115 (La. 3/15/22), 334 So. 3d 395 (citing *Steak v. Hat World, Inc.*, 15-1108, p. 5 (La. App. 4 Cir. 5/4/16), 191 So.3d 712, 715). This is indisputably not the case here.
[48] R. Doc. 8 at ¶¶ 4, 81, 278.
[49] *Id.* at ¶¶ 45, 185.
[50] *Id.* at ¶ 59.

wages;" and that Harvey VFD "failed to submit the owed wages" within the time permitting by law. *Sutton*, 351 So. 3d at 409. Accordingly, the Court should dismiss Gueringer's LWPA claim.

**VI. Gueringer's 42 U.S.C. § 1983 procedural due process and joint action/civil rights conspiracy claims should be dismissed.**

**a. Gueringer's Section 1983 procedural due process claim should be dismissed because his employment was not a protected property interest and because Harvey VFD is not a state actor.**

Gueringer alleges that Harvey VFD deprived him of procedural due process by terminating him "without notice, charges, investigation, hearing, or a meaningful opportunity to respond" in violation of Section 1983.[51] "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). To state a Section 1983 procedural due process claim against Harvey VFD, Gueringer "must (1) 'identify a protected life, liberty, or property interest' and (2) 'prove that governmental action' deprived [him] of that interest." *Wright v. Arlington Indep. Sch. Dist.*, 834 F. App'x 897, 902 (5th Cir. 2020) (quoting *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018)). Gueringer fails to meet both of these criteria.

**i. Gueringer did not hold a protected property interest.**

First, Gueringer did not hold a constitutionally-protected property interest in his employment with Harvey VFD. "To prevail on a § 1983 claim for deprivation of procedural due process, a plaintiff must first demonstrate the existence of a property interest that is protected by the Due Process Clause." *Moreau v. St. Landry Par. Fire Dist. No. 3*, 413 F. Supp. 3d 550, 563 (W.D. La. 2019), *aff'd*, 808 F. App'x 225 (5th Cir. 2020). Indeed, the "'first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed.'" *Stokes v. Farber*, 437 F. Supp. 3d 541, 550 (E.D. La. 2020). Constitutionally protected property rights are "created

[51] *Id.* at ¶ 198.

and defined by rights under state law that support claims of entitlement to those benefits." *Id.* Thus, Gueringer may only hold a protected property interest in continued employment with Harvey VFD "by virtue of his tenured civil service employment" or pursuant to a contractually stipulated term. *Id.* (citing *Casey v. Livingston Parish Comms'ns Dist.*, No. 07-30990, 2009 WL 577756, at *3 (5th Cir. Mar. 6, 2009); *AFSCME, Council # 17 v. State ex rel. Dep't of Health & Hosps*., 789 So.2d 1263, 1267-68 (La. 2001); *Vanderwall v. Peck*, 129 F. App'x 89, 91 (5th Cir. 2005)). When an employee "is not protected by civil service provisions" or contracted for a term, Louisiana's at-will employment doctrine shall govern the employment relationship. *Ballinger v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 2024-0639 (La. App. 1 Cir. 2/18/25), 406 So. 3d 622, 627. Importantly, "[e]mployment is presumed to be at-will unless a plaintiff alleges sufficient facts" to establish otherwise. *Id.* (emphasis added). *See also Wallace v. Shreve Mem'l Libr.*, 79 F.3d 427 (5th Cir. 1996); *Gartman v. Hous. Auth. of Jefferson Par.*, 2018 WL 1010194 (E.D. La. Feb. 22, 2018) (dismissing due process claim of at-will employee not classified under civil service for lack of protected property interest).

Here, Gueringer fails to allege that his employment with Harvey VFD was subject to Louisiana civil service laws or a contemplated term – and, indeed, he indisputably was not. Thus, Louisiana's default at-will employment doctrine applies. In the absence of any facts to the contrary, the Court cannot infer that Gueringer held a protected property interest in his employment with Harvey VFD. *See Wright*, 834 F. App'x at 902. Further, Louisiana law is clear – the Firefighters Bill of Rights does not create a property interest in continued employment, nor does it overcome at-will employment. *See e.g. Blakemore v. Town of Grambling*, 53,135 (La. App. 2 Cir. 1/15/20), 289 So. 3d 681, 688. Accordingly, Gueringer's procedural due process claim should be dismissed for failure to show that he possessed a protected property interest in his employment.

**ii. Harvey VFD is not a state actor.**

Second, and independently of the above, Gueringer was not adversely affected by a state actor. A private entity, like Harvey VFD,[52] can only be deemed a "state actor" if it meets either the "public function" test or the "nexus" test. *Price v. U-Haul Company of Louisiana*, 1998-1959 (La. 9/8/99), 745 So.2d 593, 594 (citing Lee Hargrave, *The Louisiana State Constitution: A Reference Guide*, 23 (1991) ("state due process guarantee protects against government, as opposed to private action")). Harvey VFD is not a "state actor" under either test.

**1. The public function test.**

"That a private entity performs a function which serves the public does not make its acts state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). To determine whether a private entity is a state actor under the "public function" test, "the relevant question is not simply whether a private group is serving a public function;" but rather, "whether the function performed has been traditionally the <u>exclusive</u> prerogative of the State." *Id.* at 844 (internal quotations omitted).

This concept has been applied to various private entities which, like Harvey VFD, perform traditionally "public" functions. For example, in *Rendell-Baker v. Kohn,* the United States Supreme Court held that a privately-operated school that provided public education to high school students was not a state actor under the "public function" test because, despite the state's "inten[t] to provide services...at public expense...[t]hat legislative policy choice in no way makes these services the <u>exclusive</u> province of the State." *Id.* at 842. Similarly, in *Jackson v. Metro. Edison Co.*, the United States Supreme Court held that a private utility company was not a state actor under the public function test despite "provid[ing] an essential public service required to be supplied on a reasonably continuous basis." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352

[52] *See* Exhibit 1, Louisiana Secretary of State's Certified Information Certificate for Harvey Volunteer Fire Company No. 2. *See also* R. Doc. 8 at ¶ 148.

(1974). In so holding, the *Jackson* court noted "that a [private entity] is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* at 350. Likewise, in *Blakenship v. Buenger*, the Fifth Circuit Court of Appeals held that a private, nonprofit water supply corporation was not a state actor under the public function test because "private corporations have long enjoyed a share in the water utility industry" under Texas law, and thus, did not "fall within the 'very few activities' exclusively reserved to the State." *Blankenship v. Buenger*, 653 F. App'x 330, 339 (5th Cir. 2016).

Here, Harvey VFD falls squarely within this progeny because the State of Louisiana does not exercise exclusive control over fire protection services. In fact, Louisiana law expressly reserves the right to delegate fire protection services to private entities. *See* La. R.S. § 33:2101 ("[A]ny parish or fire protection district which maintains a full-time, regularly paid fire department may...enter into a contract with a private entity for the provision of fire protection services.").[53] By enacting this provision in 1999, the Louisiana legislature made clear that private entities "enjoy[] a share" in the fire protection industry. *Blankenship*, 653 F. App'x at 339. The very existence of La. R.S. § 33:2101 confirms that fire protection is not a function exclusively reserved to the state. For this reason alone, Harvey VFD cannot be deemed a state actor under the public function test.

**2. The nexus test.**

The "nexus" test limits state action to instances in which "the State has so far insinuated itself into a position of interdependence with the [private party] that it must be recognized as a joint participant in the challenged activity." *Patrick v. Floyd Medical Center*, 201 F.3d 1313, 1315 (11th Cir. 2000). Under the nexus test, acts by a private entity may be deemed state action if, <u>with respect to the activity at issue</u>, the private entity acted in concert or conspired with state actors; is

[53] *See also* R. Doc. 8 at ¶ 148.

"entwined" with the government; is subject to governmental coercion or encouragement; is willingly engaged in joint action with the government; or is controlled by an agency of the State. *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 2007 WL 4468721, at *2 (D. Ariz. Dec. 14, 2007), aff'd, 590 F.3d 806 (9th Cir. 2010) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). The nexus test shall not be satisfied absent such joint activity by the state and private entity. *See Gallegos v. Slidell Police Dep't*, No. 07-6636, 2008 WL 1794170 (E.D. La. Apr. 18, 2008).

Here, Gueringer fails to allege, let alone establish, that Harvey VFD acted in concert with the State of Louisiana to terminate him. In fact, Gueringer fails to plead <u>any</u> facts to establish the state's involvement in Harvey VFD's decision. Harvey VFD's contractual relationship with a state body, standing alone, is insufficient to satisfy this burden. Further, even if Harvey VFD did violate the Louisiana Firefighter Bill of Rights (which it did not), this is insufficient to ascribe state action considering the Fifth Circuit's holding in *Blankenship*. *See Blakenship*, *supra*.

**b. Gueringer's Section 1983 civil rights conspiracy and joint action claims should be dismissed on the same grounds as his procedural due process claim.**

Gueringer alleges that Harvey VFD and unnamed "related actors" conspired through joint action to deprive him of "employment, wages, benefits, statutory protections, and due process" in violation of Section 1983.[54] To state a conspiracy claim under Section 1983, Gueringer must allege facts showing "(1) <u>an actual violation</u> of a right protected under § 1983 and (2) actions taken in concert by the [co-conspirators] with the specific intent to violate the aforementioned right." *Angelle v. Town of Duson*, No. 6:18-CV-00272, 2018 WL 4649788, at *8 (W.D. La. Aug. 7, 2018) (full citation omitted). *See also Johnson v. Dettmering*, No. CV 19-00744-BAJ-SDJ, 2021 WL 3234623, at *3 (M.D. La. July 29, 2021). It follows that a conspiracy claim cannot stand on its

[54] *Id.* at ¶ 208.

own merits; rather, it must be tied to an actual Section 1983 deprivation of a Constitutionally protected interest. Additionally, a Section 1983 conspiracy claim "requires a plaintiff to prove 'the existence of a conspiracy involving state action.'" *Navejas v. Jaso*, 700 F. Supp. 3d 532, 538 (W.D. Tex. 2023) (emphasis added) (quoting *Morales v. Carrillo*, 625 F. Supp. 3d 587, 598 (W.D. Tex. 2022) and *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019)). Likewise, joint action requires "an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 444 (5th Cir.), *cert. denied*, 146 S. Ct. 329, 223 L. Ed. 2d 163 (2025) (quoting *Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024)).

Here, Gueringer pleads neither a constitutionally protected property interest nor infringement upon the same by a state actor; and thus, fails to state any valid Section 1983 claim. Consequently, the Court should dismiss each of Gueringer's Section 1983 claims.

## VII. Gueringer's Louisiana Whistleblower Act claim should be dismissed because he failed to advise Harvey VFD of an action violation of state law.

The Louisiana Whistleblower Act, La. R.S. § 23:967 ("LWA"), states that an employer shall not take reprisal against an employee who, after advising the employer of the violation of law (1) discloses or threatens to disclose a workplace act or practice that is in violation of state law; (2) provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law; or (3) objects to or refuses to participate in an employment act or practice that is in violation of law. La. R.S. § 23:967(A). Before the LWA's remedies may take effect, the employee "must first advise the employer of the violation of law." *Lightell v. Walker*, 527 F. Supp. 3d 866, 893 (E.D. La. March 19, 2021). To state an LWA claim against Harvey VFD, Gueringer must allege each of the following: (1) Harvey VFD committed an

actual violation of Louisiana law through a prohibited workplace practice; (2) He advised Harvey VFD of the violation; (3) He engaged in activity protected by section 23:967(A) (including disclosing, testifying regarding, objecting to, or refusing to participate in a violation of the law by Harvey VFD); and (4) Harvey VFD took some adverse action against him as a result. *See Porto v. TBC Grand Bayou, LLC*, 2019-1376 (La. App. 1 Cir. 5/11/20), 303 So. 3d 1060, 1064.

Gueringer's allegations do not implicate "serious employer conduct," nor an "an actual violation of a state law." *Crowe v. Se. Cmty. Health Sys.*, No. CIV.A. 10-2838, 2014 WL 1456352, at *6 (E.D. La. April 15, 2014); *Lightell*, 527 F. Supp. 3d at 893. The Amended Complaint lacks allegations that remotely suggest that Harvey VFD violated state law, that Gueringer advised Harvey VFD of that violation, or that he objected to any such violation of state law. Instead, Gueringer simply alleges that he "stated he did not understand why" he was asked to revise the LWC form, and ultimately, submitted an updated version anyway.[55] Similarly, he merely alleges that he "asked who ordered his paycheck to be held."[56] These allegations fail to state an LWA claim; therefore, the Court should dismiss them.

## VIII. Gueringer's Louisiana tort law claims should be dismissed.

### a. Gueringer's intentional infliction of emotional distress claim should be dismissed for failure to allege outrageous and extreme conduct.

To state a claim for intentional infliction of emotional distress ("IIED"), Gueringer must establish: (1) conduct by Harvey VFD that is extreme and outrageous, (2) severe resulting emotional distress, and (3) that Harvey VFD desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct. *Sullivan v. Malta Park*, 2014-0478 (La. App. 4 Cir. 12/10/14); 156 So. 3d 751, 757. Louisiana

[55] *Id*. at ¶¶ 52-53.
[56] *Id*. at ¶ 55.

courts have placed a very high threshold on conduct sufficient to give rise to an IIED claim. *Id.* Indeed, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991) (emphasis added). The Louisiana Supreme Court has further limited workplace IIED claims to those involving a pattern of deliberate, repeated harassment over a sustained period. *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00); 765 So. 2d 1017, 1026. This Court endorses this limitation, as well, maintaining that workplace conduct "will rarely be so severe that it will rise to the level of 'outrageous conduct...' Ordinarily, employment disputes, even those involving discrimination and harassment, will rise to the level of intentional infliction of emotional distress in only the most unusual of cases." *Bertaut v. Folger Coffee Co.*, No. CIVA 06-2437 GTP, 2006 WL 2513175, at *4 (E.D. La. Aug. 29, 2006) (internal citations omitted); *see also Stewart v. Parish of Jefferson*, 95–407 (La.App. 5 Cir. 1/30/96), 668 So.2d 1292, *writ denied*, 96–0526 (La.4/8/96), 671 So.2d 340 (finding no IIED despite supervisor's two-year harassment campaign which ultimately led to employee's termination). Here, Gueringer plainly fails to allege that Harvey VFD engaged in any conduct approaching, let alone meeting, this high standard. The scenarios alleged in the Amended Complaint do not involve conduct that rise to the level of outrage, indecency, or atrocity required to sustain an IIED claim under Louisiana law. Accordingly, the Court should dismiss Gueringer's IIED claim.

**b. Gueringer's negligent infliction of emotional distress claim is barred by Louisiana Workers Compensation immunity.**

The Louisiana Workers Compensation Act, La. R.S. § 23:1032 ("LWCA"), immunizes employers from liability based on their negligent acts. Courts routinely and consistently hold that the LWCA bars negligence-based arising from the employment relationship. *See Brown v. Ebasco*

*Servs., Inc.*, 461 So.2d 443, 446 (La. App. 5th Cir. 1984). It is also well-established that worker's compensation tort immunity is applicable to NIED claims. *See Bertaut*, 2006 WL 2513175, at *3; *Gilpin v. Elmer Candy Corp.*, 2000 WL 713195, at *3 (E.D. La. June 2, 2000); *Bourgeois v. Curry*, 2005-0211 (La. App. 4 Cir. 12/14/05), 921 So.2d 1001; *Tumbs v. Wemco, Inc.*, 97-2437 (La. App. 4 Cir. 4/22/98), 714 So. 2d 761. Thus, because Gueringer's NIED claim is based entirely on actions arising from his employment with Harvey VFD, it fails as a matter of law.

**c. Gueringer's Louisiana civil conspiracy claim should be dismissed because it is not a standalone cause of action.**

Civil conspiracy is not an actionable, standalone claim under Louisiana law. *Crutcher-Tufts Res., Inc. v. Tufts*, 2007-1556 (La. App. 4 Cir. 9/17/08), 992 So. 2d 1091, *writ denied*, 2008-2677 (La. 1/16/09), 998 So. 2d 105 (citing *Ross v. Conoco, Inc.*, 2002–0299 (La.10/15/02), 828 So.2d 546); *See also Palowsky v. Campbell*, 22-592 (La. App. 5 Cir. 12/14/23), 378 So. 3d 226, *writ denied*, 2024-00094 (La. 6/5/24), 385 So. 3d 1161. Instead, civil conspiracy is simply a means to impute liability for an underlying intentional tort. *Barbe v. Ocwen Loan Servicing, LLC*, 383 F. Supp. 3d 634, 645 (E.D. La. 2019) (quoting *Ross*, 828 So.2d at 552 and *Butz v. Lynch*, 710 So.2d 1171, 1174 (La. App. 1 Cir. 1998)) (internal quotations omitted); *see also New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2009-1433 (La. App. 4 Cir. 5/26/10), 40 So. 3d 394, 408. "In order to recover under a theory of civil conspiracy, a plaintiff must show that an agreement existed among the defendants to commit the <u>tortious</u> act." *Markiewicz v. Sun Constr., L.L.C.*, 2021-1535 (La. App. 1 Cir. 6/14/22), 343 So. 3d 758, 766 (emphasis added). Here, Louisiana law does not offer Gueringer a separate civil conspiracy claim, but, as explained, *supra*, he fails to allege viable underlying intentional torts under Louisiana law. Therefore, Gueringer is not entitled to a civil conspiracy claim.

## IX. Gueringer's Louisiana Public Records Act claim should be dismissed because he did not request records subject to disclosure by Harvey VFD.

The Louisiana Public Records Law, La. R.S. § 44:1, *et seq.*, is substantially limited with respect to private, non-profit corporations performing traditionally governmental functions and using public funds like Harvey VFD. *Guste v. Nicholls College Foundation*, 564 So. 2d 682 (La. 1990). Indeed, a private, non-profit corporation, such as Harvey VFD, is only required to disclose public records "concerning those transactions, including the receipt and expenditure of those [public] funds." *Id.; see also* La. Att'y Gen. Op. No. 15-0080 (Aug. 25, 2015) ("A 501(c)3 Volunteer Fire Department (VFD) is not a public entity. A VFD performing a governmental function and receiving public funds is considered a public body subject to [La. R.S. § 44:1 *et seq*.], but only to the extent that its records are connected to the receipt or expenditure of public funds.").

Here, Gueringer alleges that he sought records related to "his employment, medical leave, termination, personnel file, disciplinary process, internal communications, board actions, public funding, governmental contracts, and other records."[57] Gueringer does not allege that these documents are related to receipt or expenditure of public funds. Indeed, they are indisputably not. Thus, Gueringer fails to state a cause of action under the Louisiana Public Records Law.

## X. Gueringer's civil rights conspiracy claims arising under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 fail as a matter of law.

Gueringer alleges that Harvey VFD participated in a conspiracy "motivated by discriminatory animus toward [him] as a disabled individual," in violation of 42 U.S.C. § 1985(3) ("Section 1985(3)") and §42 U.S.C. § 1986 ("Section 1986").[58] These claims fail as a matter of law because "[u]nder [Fifth Circuit] precedent... [Section 1985(3)'s] plain text doesn't cover every kind of conspiracy." *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019). Indeed, the Fifth Circuit

[57] *Id.* at ¶ 221.
[58] *Id.* at ¶ 262.

holds that "racial animus is required: '[I]n this circuit...the only conspiracies actionable under Section 1985(3) are those motivated by racial animus.'" *Id.* (quoting *Deubert v. Gulf Fed. Sav. Bank,* 820 F.2d 754, 757 (5th Cir. 1987)) (emphasis added). *See also Burns–Toole v. Byrne,* 11 F.3d 1270 (5th Cir.1994) (refusing to extend Section 1985(3) to religious discrimination). In fact, the United States Supreme Court "has never held that nonracial animus is sufficient." *Newberry v. E. Texas State Univ.,* 161 F.3d 276, 281, n2 (5th Cir. 1998) (refusing to consider whether disability could qualify as protected class under Section 1985(3)) (emphasis added). Thus, "because the weight of Fifth Circuit authority does not support disability as a protected class under § 1985(3)," Gueringer's claim arising thereunder must be dismissed. *Williamson v. Long Glade Lake, Inc.,* 2020 WL 6937462, at *5 (E.D. Tex. Nov. 5, 2020). It follows that his Section 1986 claim must be dismissed, as well, "because prevailing under section 1985 is a prerequisite for recovery under section 1986." *Vanderwall v. Peck,* 129 F. App'x 89, 91 (5th Cir. 2005) (citing *Miss. Women's Med. Clinic v. McMillan,* 866 F.2d 788, 795 (5th Cir.1989)).

## CONCLUSION

For the foregoing reasons, Defendant, Harvey Volunteer Fire Company No. 2., respectfully requests that the Court grant this Rule 12(b)(6) partial motion to dismiss, dismissing, with prejudice, Gueringer's: (1) Count 5, LEDL discrimination and retaliation claims; (2) Count 4, Rehabilitation Act discrimination claim; (3) Counts 6 and 7, Firefighters Bill of Rights violation and retaliation claims; (4) Count 8, 365 Leave claim; (5) Count 9, Louisiana Wage Payment Act claim; (6) Counts 10 and 11, Section 1983 procedural due process and conspiracy claims; (7) Count 12, Louisiana Whistleblower Act claim; (8) Counts 14, 15, and 16, Louisiana tort claims; (9) Count 13, Louisiana Public Records Act claim; and (10) Counts 17 and 18, Section 1985(3) and Section 1986 civil rights conspiracy claims. Harvey VFD further prays that the Court assess all costs

incurred in the preparation and filing of this motion to Plaintiff, and for all statutory and equitable relief to which it may be entitled.

Respectfully submitted,

**ADAMS & REESE LLP**

*/s/ Paige Franckiewicz*
**William K. Wright IV, T.A. (#36736)**
**Matthew C. Guy (#31182)**
**Paige H. Franckiewicz (#40778)**
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 585-0402
Facsimile: (504) 566-0210
billy.wright@arlaw.com
matthew.guy@arlaw.com
paige.franckiewicz@arlaw.com
***Counsel for Defendant,***
***Harvey Volunteer Fire Company No. 2***