**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BRIAN GUERINGER**<br>*Plaintiff,* | * | **CIVIL ACTION NUMBER: 2:26-cv-00674** |
| **Versus** | * | **JUDGE: DARREL J. PAPILLION** |
| **HARVEY VOLUNTEER FIRE COMPANY NO. 2** | * | **MAGISTRATE: EVA J. DOSSIER** |
| *Defendant.* | * | **JURY TRIAL DEMANDED** |
| * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Brian Gueringer, who submits this memorandum in opposition to Defendant Harvey Volunteer Fire Company No. 2's *Second Motion to Dismiss*. R. Doc. 11. The motion asks the Court to resolve factual disputes, disregard express allegations, and treat alternatively pleaded claims as admissions against one another. Rule 12(b)(6) permits none of those steps.

Plaintiff does not oppose dismissal of Count Five, Count Eight, and Counts Seventeen and Eighteen. He opposes dismissal of Counts Four, Six, Seven, and Nine through Sixteen. At minimum, any dismissal based on a curable pleading deficiency should be without prejudice and accompanied by leave to amend.

**FACTUAL BACKGROUND**

Plaintiff worked as a full-time paid operator/firefighter from January 2019 until April 2025. R. Doc. 8 ¶¶ 10(b), 15, 81. Defendant is a nonprofit fire company that receives public funds and resources and provides fire-protection and emergency-response services under governmental

authorization and/or contract within Jefferson Parish's coordinated public-safety system. *Id.* ¶¶ 10(d)–(e), 88–103. Plaintiff alleges that Defendant and fire-district or parish connected actors coordinated decisions concerning his leave, return, and termination. *Id.* ¶¶ 205–10.

Plaintiff has Crohn's disease, immune suppression, pulmonary emboli and blood clot complications, and long-Covid complications. *Id.* ¶¶ 16–21. In August 2024, Fire Chief Scott Berthelot told Plaintiff to ask his physician about disability and stated that Defendant could not allow Plaintiff to return if he might develop blood clots from workplace COVID exposure. *Id.* ¶¶ 28–35. Plaintiff reported these statements, sought legal advice concerning applicable firefighter rights, and continued to seek a return to duty. *Id.* ¶¶ 36–40.

In February 2025, Defendant demanded that Plaintiff remove language from a Second Injury Fund/workers' compensation form stating that he contracted COVID at work. *Id.* ¶¶ 45–53. After Plaintiff questioned and objected to the demand, Defendant intentionally held his paycheck and later issued the payment. *Id.* ¶¶ 54–59. On April 10, 2025, Plaintiff's physician released him to full duty without restriction. Defendant terminated him effective the next day. *Id.* ¶¶ 70–81. Chief Berthelot gave no reason; Defendant's records later stated "Involuntary – Failure to Perform Job Duties," even though Plaintiff had just been released and never allowed to return. *Id.* ¶¶ 73–85.

## <u>LAW AND ANALYSIS</u>

### I. The Rule 12(b)(6) standard requires the Court to credit the pleaded facts and reasonable inferences.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A

claim is plausible when the pleaded facts permit the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Plausibility does not require a showing that liability is probable, nor must a plaintiff prove his case in the complaint. *Id.*; *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In deciding the motion, the Court must accept all well-pleaded facts as true, view them in the light most favorable to Plaintiff, and draw all reasonable inferences in his favor. *Hickson v. St. David's Healthcare Partnership, L.P., L.L.P.*, 168 F.4th 282, 286 (5th Cir. 2026). The Court may not weigh evidence, resolve factual disputes, or select Defendant's competing explanation over a reasonable inference supported by the pleadings. *Lormand*, 565 F.3d at 232, 239. The question at this stage is whether Plaintiff has plausibly stated a claim; not whether Defendant's alternative account may ultimately prevail.

**II. Count Four plausibly alleges Rehabilitation Act discrimination; alternative pleading does not defeat sole causation.**

Section 504 requires disability to be the sole reason for the challenged exclusion or denial. *Hickson v. St. David's Healthcare Partnership, L.P., L.L.P.*, 168 F.4th 282, 289 (5th Cir. 2026). Plaintiff pleads that element verbatim and supports it with facts: Chief Berthelot said Defendant could not permit Plaintiff to return if COVID exposure could cause blood clots; Defendant considered disability retirement; and Defendant terminated Plaintiff the day after an unconditional medical release. R. Doc. 8 ¶¶ 28–35, 70–85, 133–39. Those allegations permit the inference that disability, and disability alone, was the sole factor considered in the termination.

Defendant's contrary theory depends entirely on treating other counts; ERISA interference, whistleblower retaliation, Firefighter Bill of Rights retaliation, and intentional infliction of emotional distress; as admissions of additional causes. R. Doc. 11-1 at 6–7. Rule 8 forecloses that approach:

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically. . . . A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d)(2)–(3). A retaliation theory may coexist with a discrimination theory at pleading, and an IIED count alleges a tortious level of intent—not an independent cause of termination. The Court must test whether Count Four is plausible on its own allegations, not use permitted alternatives to cancel it. *Hickson* itself reviewed the allegations as true at the pleading stage and allowed a sole-causation claim to proceed where the alleged facts supported it. 168 F.4th at 286, 289–90. Count Four should remain.

### III. Counts Six and Seven plausibly invoke the Louisiana Firefighter Bill of Rights.

The statute expressly covers a paid fire employee of a nonprofit corporation that provides fire protection under contract with a fire protection district or political subdivision. La. R.S. 33:2181(A)(3). Defendant admits it is a nonprofit fire company contracting with Jefferson Parish, R. Doc. 11-1 at 2, while the Complaint alleges Plaintiff was a full-time paid firefighter and the contractual/public-service relationship. R. Doc. 8 ¶¶ 10(b), 88–103, 148–50. Coverage is therefore plausibly alleged.

The statutory protections arise whenever an authorized person makes inquiries or gathers evidence concerning a fire employee with **a** view toward discipline, demotion, **or** dismissal. La. R.S. 33:2181(A)–(C). Plaintiff alleges far more than casual questions. Before withholding wages and termination, Defendant conducted inquiries, fact gathering, communications, document and medical review, and internal discussions regarding Plaintiff's medical condition, work eligibility, compensation documentation, COVID disclosures, continued employment, and alleged compliance with administrative and ethics requirements. R. Doc. 8 ¶¶ 104–06, 152–57. Defendant allegedly consulted supervisors and counsel, evaluated whether Plaintiff could return, used his responses and documents in adverse decisions, and then dismissed him without any statutory

notice or safeguards. *Id.* ¶¶ 105, 157–65. The allegation that this occurred with a view toward wage withholding and dismissal is express. *Id.* ¶ 153.

Louisiana courts reject an employer's attempt to avoid the statute by calling its process informal. *Farrelly v. Jefferson Parish East Bank Consolidated Fire Protection District*, 19-216, pp. 4–6 (La. App. 5 Cir. 12/4/19), 284 So. 3d 680, 684-86. *Farrelly* directly rejects Defendant's argument that its inquiries were merely "administrative housekeeping." In that case, the appointing authority testified that he did not yet know whether discipline would result and characterized the questioning as an effort merely to confirm the firefighter's arrest. Nevertheless, the court held that questioning by authorized senior officials concerning potential misconduct constituted an interrogation. The inquiry's true nature turns on the surrounding circumstances, rather than an employer's characterization or professed intent. More specifically, the employee's rights "cannot be subverted by manipulating or disguising the form of query," and the appointing authority's characterization does not determine the inquiry's true nature. *Id.*

The **allegations here are materially stronger**. Here, Defendant questioned Mr. Gueringer about his medical condition and ability to return to work, demanded revisions to his workers' compensation documentation, investigated alleged ethics and paperwork noncompliance, reviewed medical and employment documents, consulted supervisors and counsel, and evaluated whether he would remain employed. R. Doc. 8 ¶¶ 34–37, 45–58, 104–06, 152–65. Those activities were followed by an intentional wage hold and dismissal. If the limited confirmation inquiry in *Farrelly* implicated La. R.S. 33:2181, the broader information-gathering process alleged here at least plausibly constituted an investigation conducted with a view toward discipline or dismissal. *Farrelly* also held that later procedural steps do not automatically cure an earlier noncompliant interrogation; absent an effective curative process, discipline flowing from the violation remains

an absolute nullity. *Id.* at pp. 6–7, 284 So. 3d at 686–87. Here, the Complaint alleges no later notice, compliant interrogation, or curative reinvestigation before termination.

In a similar case, *Murphy v. New Orleans Fire Department*, the court found that even though the department claimed no formal investigation occurred because video conclusively showed an alleged infraction; the court nevertheless held that requesting and revising reports and proceeding toward discipline constituted an investigation and made the discipline an absolute nullity. *Murphy v. New Orleans Fire Department*, 2025-0722, pp. 5–7 (La. App. 4 Cir. 4/28/26). Further in *Bracey v. City of Alexandria*, the court in that case concluded that an investigation begins when the employer starts gathering information for potential disciplinary use, not merely when it issues formal notice. In that case, a firefighter was on extended medical leave, when the fire chief began surveilling him. The fire chief testified that he was merely monitoring the employee and had no present intention of imposing discipline. The civil service board nevertheless treated that surveillance as the beginning of an investigation, and the court affirmed, rendering the eventual termination an absolute nullity because the investigation exceeded the statutory period. *Bracey v. City of Alexandria*, 11-621 (La. App. 3 Cir. 2/1/12), 84 So. 3d 669, 671–74 (applying La. R.S. 33:2186).

The allegations here are substantially similar. In this instance, Defendant gathered information concerning Gueringer's medical condition, ability to return, injury documentation, ethics compliance, and continued employment; reviewed documents and medical information; consulted supervisors and counsel; and subsequently withheld wages and terminated him. R. Doc. 8 ¶¶ 104–06, 152–65. Under *Bracey*, Defendant cannot postpone the legal beginning of the investigation by calling these activities routine monitoring or "administrative housekeeping."

Count Seven also alleges protected activity and reprisal. Plaintiff objected to Defendant's

efforts to block his return without lawful process, objected to pressure concerning injury documentation, asked who ordered the wage hold, sought advice about firefighter rights, and opposed the absence of statutory protections. R. Doc. 8 ¶¶ 168–75. Defendant says these acts concern only sick leave, but the pleading ties them to the investigation, documentation pressure, and procedural rights protected by Subpart H. Whether Defendant understood Plaintiff to be invoking those rights, and whether subsequent wage hold and termination were retaliatory, are factual questions. If the Court requires more detail concerning the communication of a specific Subpart H right, amendment is the proper remedy, rather than dismissal with prejudice.

## IV. Count Nine alleges unpaid compensation at termination, not merely the earlier delayed check.

Defendant addresses the February 2025 delayed paycheck but disregards paragraph 190. The paragraph alleges that, upon termination, Defendant failed to timely pay amounts owed, including wages, accrued leave, vacation, benefits, and other compensation due under the parties' policies and employment arrangement. R. Doc. 8 ¶ 190. Together with allegations of employment and termination, this pleads the elements identified by Defendant: an ended employment relationship, compensation then due, and untimely payment. See La. R.S. 23:631(A)(1); *Sutton v. Adams*, 19-0975, p. 7 (La. App. 4 Cir. 10/12/22), 351 So. 3d 403, 409. The amount owed and the applicable policy terms are proof questions, not Rule 8 prerequisites. Plaintiff should receive leave to identify the categories, amounts, and dates after reviewing payroll and policy records controlled by Defendant.

## V. Counts Ten and Eleven should not be dismissed before the governmental contract and control relationship are developed.

Property interests arise from state law, contract, and other rules securing a legitimate claim

of entitlement. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985). Defendant argues that Plaintiff was indisputably at will because he did not use the words "classified civil service." But a complaint need not plead the correct legal label when its facts provide notice. *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam). Here, Plaintiff alleges he was a full-time paid firefighter in a nonprofit department operating under contract with a fire district or political subdivision, subject to public funding, delegated authority, and statutory firefighter rules. R. Doc. 8 ¶¶ 10(b), 88–108, 193–201.

The Fifth Circuit has held, in a closely analogous case, that a volunteer-department fire service position may be classified as a civil service position, and therefore protected property, depending on whether the fire protection district holds the contractual right of selection, appointment, supervision, and discharge. *Maurer v. Independence Town*, 870 F.3d 380, 385–87 (5th Cir. 2017) (applying La. Const. art. X, § 16 and La. R.S. §§ 33:2535, 33:2541). *Maurer* reversed summary judgment because the district's agreement and actual authority created factual disputes over civil-service status. *Id.* Defendant supplies no Harvey–Jefferson Parish or fire-district agreement; its Secretary of State certificate proves only corporate form. R. Doc. 11-2. Corporate form does not answer who possessed the right to approve, supervise, investigate, discipline, or discharge this paid position. *Maurer* also rejected the same analytical shortcut Defendant advances here. Civil Service status does not turn on the general employer-employee test, the entity that formally issues the paycheck, or the amount of day-to-day control actually exercised. Instead, La. R.S. 33:2541 directs the court to determine whether the fire protection district possessed the contractual right to select, appoint, supervise, and discharge the position. *Maurer v. Indep. Town*, 870 F.3d 380 (5th Cir. 2017). As the Fifth Circuit explained, "[h]aving a right and exercising it are two different things." *Id.* at 387. The agreement in *Maurer* required

district approval of personnel positions, reimbursed payroll expenses, imposed district policies, authorized district investigations, and permitted the district to issue binding disciplinary decisions. *Id.* at 382–83. The provisions created factual disputes concerning civil service status even though the volunteer department administered payroll and managed daily operations. *Id.* at 386-387. Here, the Complaint alleges a comparable contractual and operational relationship, but Defendant has supplied only a Secretary of State certificate; not its agreement with Jefferson Parish or the applicable fire district. That certificate establishes corporate form; it does not establish who possessed the contractual rights to approve, supervise, investigate, discipline, or discharge Gueringer's position. Because *Maurer* reversed summary judgment after discovery based on factual disputes created by the governing contract, dismissal is even less appropriate here, where Defendant has not produced the contract allocating authority over Gueringer's position.

For similar reasons, state action is not resolved by saying fire protection is sometimes privately supplied. State-action is a fact-specific inquiry into whether the challenged conduct is fairly attributable to a government, including the government's delegated authority, participation, encouragement, control, and nexus to the challenged decision. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Plaintiff alleges public funding, tax-derived resources, public equipment and facilities, governmental dispatch and emergency coordination, delegated authority, contract performance, and coordination with fire-district and parish-connected actors regarding the termination itself. R. Doc. 8 ¶¶ 88–103, 205–10. Those allegations exceed public funding alone.

*Pearson v. Shriners Hospitals for Children, Inc.*, 133 F.4th 433 (5th Cir. 2025), reinforces the need to connect government participation to the challenged conduct. The complaint there failed because it did not plausibly allege that state officials participated in the specific policy or decision at issue, and its joint-action theory lacked facts supporting an agreement or meeting of the minds.

*Id.* at 443–44. Here, paragraphs 205 through 210 allege what *Pearson* found missing: communications and coordination with fire-district and parish-connected actors about preventing Gueringer's return, withholding statutory process, and timing and documenting the termination. Whether evidence bears out those allegations is a question for discovery, not a basis to disregard them at the pleading stage.

*Yeager v. City of McGregor*, 980 F.2d 337 (5th Cir. 1993), does not compel dismissal. It decided a developed summary-judgment record under Texas law and stressed that the city had no day-to-day control and no role in the volunteer association's membership decisions. *Id.* at 338, 343–44. This case arises under Louisiana's specific fire-district and civil-service framework, and the governmental contract and control evidence has not been produced. *Maurer*, the Louisiana-specific Fifth Circuit authority, confirms why those facts matter.

Count Eleven pleads that public-safety, fire district, parish-connected, and other actors communicated about preventing Plaintiff's return; discussed disability, future treatment, leave, and procedural protections; and coordinated the timing, documents, and stated rationale for termination. R. Doc. 8 ¶¶ 205–10. Allegations on information and belief are permissible where the details of internal communications are peculiarly within the opposing parties' control, provided the pleaded facts furnish a plausible basis. *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). The temporal sequence, changing explanations, contractual public-service relationship, and alleged coordination provide that basis. At a minimum, the proper course is limited amendment after production of the governing agreements, not dismissal with prejudice.

## VI. Count Twelve expressly alleges notice of actual Louisiana-law violations and resulting reprisal.

The Louisiana Whistleblower Statute protects an employee who, after advising the employer of a violation of law, objects to or refuses to participate in the unlawful practice. La. R.S. 23:967(A). The motion argues Plaintiff merely said he did not understand the paperwork demand and asked who held his paycheck. R. Doc. 11-1 at 18–19. That selective account omits the operative allegations. Plaintiff alleges that he disclosed, objected to, and opposed actual violations; objected to pressure to alter injury documentation and the wage hold; objected to disability-based refusal to restore him and denial of firefighter protections; and "advised Defendant that its conduct violated Louisiana law, including Louisiana firefighter-rights statutes, wage-payment laws, and laws governing work-related injury reporting." R. Doc. 8 ¶¶ 213–18. He then alleges wage withholding, refusal to restore, termination, and loss of benefits as reprisal. *Id.* ¶¶ 219–20.

Those facts satisfy the elements Defendant recites. The underlying Firefighter Bill of Rights violation is independently plausible for the reasons above, and Count Nine alleges an actual final-pay violation. Whether the notice was written or oral, precisely when it occurred, and who received it are matters for discovery. If the Court requires those particulars, Plaintiff requests leave to amend based on his written objections and communications rather than a merits dismissal.

## VII. Count Thirteen is governed by the Louisiana Supreme Court's later, broader public-records decision.

Defendant relies on *Guste* and a 2015 Attorney General opinion to argue that a private nonprofit must disclose only records directly showing the receipt or expenditure of public money. R. Doc. 11-1 at 22. The Louisiana Supreme Court rejected that cramped approach in *New Orleans Bulldog Society v. Louisiana Society for the Prevention of Cruelty to Animals*, 16-1809, pp. 8, 12–

14 (La. 5/3/17), 222 So. 3d 679, 685, 687–88. A private nonprofit that contracted with a city, received public funds, and performed a municipal function was an instrumentality subject to the Public Records Law. *Id*. The required production included all documents specifically related to the contracted governmental duties, not only financial ledgers, and the scope could not be circumscribed by contract. *Id.* at pp. 12–14, 222 So. 3d at 687–88.

The analogy is direct. Defendant admits it is a nonprofit fire company contracting with Jefferson Parish. R. Doc. 11-1 at 2. The Complaint alleges that Defendant receives public funding and tax-derived resources and performs coordinated public fire-protection and emergency-response duties under governmental authority. R. Doc. 8 ¶¶ 88–103, 229–30. Plaintiff's July 2025 request expressly sought records concerning "public funding" and "governmental contracts," as well as board actions and employment and disciplinary decisions involving a paid firefighter who performed those contracted public duties. *Id.* ¶¶ 222, 229–30. Defendant's statement that the requested documents are "indisputably" unrelated to public money contradicts paragraph 222 and, in any event, asks for a fact determination that *Bulldog Society* says must be made record by record. Count Thirteen should remain.

### VIII. The motion does not establish dismissal of Counts Fourteen through Sixteen as a matter of law.

Louisiana imposes a demanding standard for intentional infliction of emotional distress: extreme and outrageous conduct, severe distress, and intent or substantial certainty. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In the workplace, the claim ordinarily requires a pattern of deliberate, repeated harassment rather than an ordinary termination dispute. *Nicholas v. Allstate Insurance Co.*, 99-2522, pp. 13–14 (La. 8/31/00), 765 So. 2d 1017, 1026–27. The Complaint alleges such treatment over a period of months**:** Defendant allegedly exploited known

medical fragility; pressured Plaintiff toward disability; said he could not return because of blood clot risk, pressured him to alter work-injury documentation; held wages after he objected; refused to restore him after full medical clearance; and terminated his benefits despite knowing his life-sustaining treatment depended on insurance. R. Doc. 8 ¶¶ 22–81, 235–40, 277–84. It alleges severe anxiety, depression, humiliation, medical aggravation, and related harm, and alleges Defendant intended that distress or knew it was substantially certain. *Id.* ¶¶ 238–39.

Defendant ultimately may show this conduct does not cross Louisiana's high threshold. But context, cumulative conduct, intent, and Defendant's knowledge of Plaintiff's particular medical vulnerability are factual matters. *White* directs that the conduct be evaluated in context, including the actor's knowledge and any abuse of a position of authority. 585 So. 2d at 1209–10. The Court should not reduce the allegations to an ordinary discharge and resolve the fact-intensive outrage question on Defendant's preferred characterization.

Count Fifteen is pleaded in the alternative. Defendant's workers' compensation argument assumes every negligence-based emotional injury arising around employment is compensable and therefore exclusive. Louisiana law is narrower. A mental injury caused by mental stress is compensable only when it results from sudden, unexpected, and extraordinary stress related to employment. La. R.S. 23:1021(8)(b). And workers' compensation exclusivity bars tort claims only for injuries that fall within the Act's basic coverage. *O'Regan v. Preferred Enterprises, Inc.*, 98-1602, pp. 14–16 (La. 3/17/00), 758 So. 2d 124, 133–34 (on rehearing). Where the Act affords no remedy, it affords no employer immunity. *Id.* Plaintiff alleges emotional injury from a months-long course and post-release termination, not a sudden workplace accident, and Defendant identifies no pleaded fact establishing compensability under the Act. The immunity defense therefore cannot be resolved from the face of the Complaint.

Count Sixteen correctly invokes Louisiana Civil Code article 2324 as a theory of solidary liability, not a freestanding tort detached from wrongdoing. It identifies intentional infliction of emotional distress and intentional wage withholding among the underlying acts and alleges an agreement, coordinated communications, timing and documentation, and overt acts designed to prevent return and effect termination. R. Doc. 8 ¶¶ 248–54. Defendant is correct only that conspiracy is derivative. If Count Fourteen remains, the pleaded article 2324 theory remains with it. See *Ross v. Conoco, Inc.*, 02-0299, p. 8 (La. 10/15/02), 828 So. 2d 546, 552. Dismissing the label while the underlying intentional tort and agreement allegations survive would elevate form over substance.

**IX. Any curable deficiency warrants leave to amend, not dismissal with prejudice.**

The motion seeks prejudice across every challenged count, including those attacked for lack of factual detail. The requested remedy is unwarranted. The Fifth Circuit's settled practice is to afford at least one meaningful opportunity to cure pleading deficiencies unless amendment would be futile or the plaintiff has declared an unwillingness or inability to amend. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Plaintiff amended before Defendant filed this second motion; no court has identified deficiencies or granted an opportunity to cure them. The first amendment therefore does not establish futility.

If the Court concludes that Counts Seven, Nine, Ten, Eleven, Twelve, Fourteen, Fifteen, or Sixteen require more particulars, Plaintiff requests leave to plead the relevant communications, final compensation categories and dates, governing employment policies, fire-district or parish contract terms and control rights, public-actor identities, whistleblower notices, medical vulnerability and distress facts, and the participants and acts underlying article 2324 liability. Those additions would directly address Defendant's detail-based objections.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's Second Motion to Dismiss as to Counts Four, Six, Seven, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen. Plaintiff does not oppose dismissal of Counts Five, Eight, Seventeen, and Eighteen. If the Court finds any opposed count insufficiently pleaded, Plaintiff requests dismissal without prejudice and leave to amend.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Karl White*
**Karl White (#40991)**
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email: karl@miniaslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Opposition* has been served upon all counsel of record through the Court's CM/ECF system and/or by electronic mail and/or other means authorized by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Louisiana on this 18th day of August, 2026.

*/s/ Karl White*
**KARL WHITE**